STAHL *v.* KINCADE, ET AL.

[No. 19,647. Filed September 23, 1963. Rehearing denied November 7, 1963. Transfer denied January 17, 1964. Petition for reconsideration of denial of transfer denied March 20, 1964.]

*Wiley E. Hosier,* of Terre Haute, for appellant.

*Berry, Kincade & Allen,* of Terre Haute, *Ernest J. Zwerner, Thomas H. Hicks, Verl G. Miller, Hansford C. Mann, Jordan D. Lewis, Jerdie D. Lewis, Robert H. Duffy, Luther G. Johnson, Earl M. Mann, David E. Rosenfeld, Robert G. Wolfe, Jack H. Mankin, Clelland Hanner,* all of counsel, all of Terre Haute, *James V. Donadio, George B. Gavit,* and *Ice, Miller, Donadio & Ryan,* all of counsel, all of Indianapolis, for appellees.

PFAFF, J.—This appeal is from a judgment entered in an action for libel brought by appellant when appellant refused to plead over following the sustaining of de-

murrers to her amended complaint. The alleged libelous language complained of was set forth in what are denominated as counter-claims in a former action between appellant, as plaintiff, and the appellees, Paul L. Petty and Mary Petty, as defendants, in which action the other three appellees were attorneys for defendants.

Appellees contend that the alleged libelous matter was an absolutely privileged communication because it was set forth and published in a judicial proceeding.

It is alleged in the amended complaint in the present action that appellant, as plaintiff, filed an action against the appellees, Paul L. Petty and Mary Petty, as defendants, seeking an injunction. The complaint in the injunction action alleged that the defendants owned property which adjoined plaintiff's property at the rear thereof and that they erected a basketball court thereon; that the properties were in a residential section of the city of Terre Haute, Indiana, where private homes exclusively prevail; that the use of the basketball court was an abuse of the residential private property rights of plaintiff; that the defendants' back yard was converted from a private and residential use to a public use; that defendants encouraged the use of their back yard as a public basketball playground, which was unsupervised, unfenced and unguarded. Further allegations were made as to the noise, annoyance and disturbance as constituting a nuisance and as to trespasses by the players upon plaintiff's property, and the use of vulgar and profane language. The prayer was for an injunction enjoining the defendants from permitting their residential property from being used as a public playground, and from permitting the basketball players to trespass upon plaintiff's property.

In the injunction action defendants, Paul L. Petty and Mary Petty, filed an unverified pleading de-

nominated a counterclaim, which alleged that plaintiff was at the time of filing her complaint, and for a long time prior thereto, living in open and notorious adultery with a married man who was a member of the police department of the city of Terre Haute; that her conduct with said man was indecent, scandalous and repugnant to the sense of morals of the neighborhood, and particularly repugnant, indecent and offensive to the defendants; that plaintiff's conduct shocks the sensibility of the defendants and tends to disgrace the stature of the law in the eyes of the children of the neighborhood and creates disrespect in general for officers of the law and the uniform worn; that plaintiff's overt and notorious conduct constitutes a private and public nuisance and depreciates the value of property in the neighborhood. The court was asked to enjoin plaintiff from further adulterous entertainment of said married man.

On plaintiff's motion the counterclaim was stricken from the record. Thereupon defendants filed another purported counterclaim, verified by counsel, containing the allegations of the first and further alleging that defendants erected the basketball court and encouraged its use by the youth of the neighborhood in order to distract their attention from plaintiff's activities and to prevent further depreciation of the morality of said children by their watching and speculating about the plaintiff's immoral and indecent activities; that but for plaintiff's immoral activities there would be no need for defendants using their property to preserve the morality of the children and youth of the neighborhood. The prayer of this pleading was the same as that of the first purported counterclaim. This pleading was also stricken. After trial, a judgment was rendered enjoin-

ing defendants from trespassing upon plaintiff's property.

The amended complaint in the present action, to which demurrers were sustained, alleges the filing by appellant of her amended complaint in the injunction action, and sets forth the complaint in full, as well as the two purported counterclaims. It is alleged that the appellee lawyers, with the consent and approval of the Pettys "contriving and wantonly and maliciously intending to besmirch and injure the plaintiff in her good name, reputation and credit, and to bring her in public scandal, infamy and disgrace and low repute, infamy and disgrace with and among her good neighbors and other good and worthy citizens, and to cause it to be suspected and believed by these neighbors and citizens that the plaintiff had been and was guilty of the offenses . . . set forth in (the) counterclaim" did not file the same in due course of law and that it was not pertinent, relevant or germane to the issues in the injunction suit; that after the counterclaim was stricken from the record the defendants to further malign, blaspheme and maliciously attack and deprive plaintiff of her good name and character, filed the second purported counterclaim which was entirely foreign and irrelevant to the issues involved, alleging maliciously and falsely that plaintiff was openly and notoriously guilty of adultery; that the besmirching and blasphemous charge was made for the sole purpose of injuring and damaging plaintiff's character and reputation among her neighbors and friends and other citizens; that her character was besmirched and her health impaired; that the second purported counterclaim was not filed in due course of law as it was neither pertinent nor relevant to the issues involved. It is further alleged that all charges made in the purported counterclaim

were wholly false and designed to besmirch and ruin plaintiff's character and good name; that the charges were framed and conspired in malice; that the repetition of the charge of open and notorious adultery in the verified purported counterclaim was knowingly, wantonly and falsely made in malice. A judgment for damages was prayed for.

The demurrers in the present action were based upon want of facts, and were accompanied by memoranda.

Appellant devotes a portion of her argument to the alleged insufficiency of the memoranda. However, inasmuch as the demurrers were sustained, the ruling of the trial court will be affirmed if the ruling was right on the merits, regardless of whether or not the memoranda contained appropriate specifications. *Bruns* v. *Cope* (1914), 182 Ind. 289, 296, 105 N. E. 471; *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* (1938), 104 Ind. App. 540, 546, 12 N. E. 2d 396; *Burns* v. *Mills, Receiver* (1925), 82 Ind. App. 621, 147 N. E. 300; *Washington Hotel Realty Company* v. *Bedford Stone, etc., Co.* (1924), 195 Ind. 128, 136, 143 N. E. 156; *State, ex rel.* v. *Sizelove* (1925), 83 Ind. App. 48, 50, 137 N. E. 616.

For the purpose of determining whether the trial court committed error in sustaining the demurrers, we must accept all facts well pleaded as being true. *Pier* v. *Schultz* (1962), 243 Ind. 240, 182 N. E. 2d 255, 257, as well as all reasonable inferences from the facts alleged. See also 23 I. L. E., Pleading, §108, p. 351, with cases cited.

The principal argument by the parties in this case concerns whether or not the matters set forth in the purported counterclaims were privileged.

As this court said in *Cadle* v. *McIntosh* (1912), 51 Ind. App. 365, 370, 99 N. E. 779:

"The law of libel and slander recognizes two classes of privileged communication, absolute and qualified. If the communication is made under such circumstances as to constitute an absolute privilege, no right of action accrues, even though the words, spoken or written, would otherwise be actionable." See also 33 Am. Jur., Libel and Slander, §124, p. 123; 53 C. J. S., Libel and Slander, §87b, pp. 140, 141; 18 I. L. E., Libel and Slander, §51, p. 474.

It is said in 33 Am. Jur., Libel and Slander, §149, p. 144:

"In England the rule obtains that any statement contained in a pleading is absolutely privileged irrespective of its relevancy to the issues. This rule is followed in a few American jurisdictions. The prevailing rule in the United States is that such statements are privileged when pertinent and relevant to the subject under inquiry, however false and malicious such statements may be. But statements in pleadings are not privileged if they are not relevant or pertinent to the subject matter of the action. . . . "

While the common law of England prior to the fourth year of the reign of James the First (with certain exceptions) was adopted as the law of this state, §1-101, Burns' 1946 Replacement, the early English rule was not such as that above stated as the present English rule. The early English cases made the materiality or relevancy of the communication necessary to confer an absolute privileged character on the communication. 36 C. J., Libel and Slander, §225, p. 1251. For a most interesting discussion of the early English cases see *Myers* v. *Hodges* (1907), 53 Fla. 197, 44 So. 357.

In the case of *Wilkins* v. *Hyde, et al.* (1895), 142 Ind. 260, 261, 41 N. E. 536, our Supreme Court said:

" . . . It is well settled, by many authorities, that there are occasions upon which words may be spoken or written of a person, whereby the implication of malice, which ordinarily arises from the words themselves, is destroyed. Among this privileged class or occasion is a proceeding in due course of law. No actual malice is shown in the complaint, but it appears that the words were written and published in a petition expressly authorized by statute, to be filed in a proceeding in court, and that the alleged libelous words were but the statutory grounds, which if found to exist, would warrant the court, under this statute, to award the custody of appellant's children to said board. It is obvious, therefore, that appellant's alleged cause of action arose out of a proceeding in court in a matter expressly sanctioned by the statutes of the State, and comes broadly within the rule to which we have referred.

"The reason upon which the rule is founded is the necessity of preserving the due administration of justice. As to whether the charge be true or false, or whether it be sufficient or not to effect the object in view, if it be made in the due course of a judicial or legal proceeding, it is privileged and cannot be made the basis of an action for defamation of character. *Hartsock* v. *Reddick*, 6 Blackf. 255, 38 Am. Dec. 141; *Hastings* v. *Lusk*, 22 Wend. 410, 34 Am. Dec. 330, and authorities cited in note to this last case; *Strauss* v. *Meyer*, 48 Ill. 385."

In that case there was no allegation of malice, and the publication was of a matter relevant and pertinent to the controversy. We have found no case, and none has been cited to us, as to the effect on the general rule in Indiana where a matter contained in the pleadings is not relevant or pertinent or has no bearing on or relation to the matter in controversy. However, a very similar privilege exists in the case of witnesses in judi-

cial proceedings, and is based upon much the same reasons. Our Supreme Court has indicated that the general rule as to absolute privilege is subject to a qualification. Thus, in *Hutchinson* v. *Lewis* (1881), 75 Ind. 55, at page 60, our Supreme Court said:

" . . . The rule, however, assumes that the witness will not abuse his privilege by making statements which are impertinent and immaterial, and which are not in fact, nor does he believe them to be, responsive to questions propounded to him. All statements of a witness, as a general rule, are absolutely privileged. Those that are not are presumptively so, and, therefore, before a witness can be held liable for the latter this presumption must be overcome by showing affirmatively that such statements were false and malicious. When this is done, the protection of the law is withdrawn, and he is liable precisely as though such statements were not made in a judicial proceeding. . . . "

We are inclined that the rule presently followed in England should not be adopted here without the qualification generally adhered to in other jurisdictions throughout the United States that the statements in order to be privileged must be pertinent or relevant to the litigation or bear some relation thereto.

As stated in 33 Am. Jur., Libel and Slander, §150, p. 146:

"The question of the relevancy or pertinency of matters contained in the pleadings, when in issue, is never left to the jury, but is a question of law for the court. As to the degree of relevancy or pertinency necessary to make alleged defamatory matter privileged, the courts favor a liberal rule. The matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented

by the pleadings. It must, however, be legitimately related thereto, or so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial." See also 53 C. J. S., Libel and Slander, §104c, p. 170, and annotations in 16 A. L. R. 750, 42 A. L. R. 878, and 134 A. L. R. 487.

In *Barnett* v. *Loud* (1917), 226 Mass. 447, 449, 115 N. E. 767, the plaintiff was an attorney. An action had been brought in the name of plaintiff's assignee to collect rent on a room let to defendant. Defendant filed an answer and claim for recoupment, accusing plaintiff of gambling during office hours and allowing a woman of bad reputation to frequent his office, whereby the defendant suffered damages in the use of the office for the rent of which he was sued. The court observed that, "The alleged libel is contained in so much of the answer as related to recoupment, and while under the statute governing assignments any defence, counterclaim or set off available against the assignor may be asserted against his assignee, a cross demand unless arising from the contract sued on cannot be maintained." It was held that the matter not being pertinent and relevant to the controversy did not come within the rule of privilege.

In the present case the matter alleged in the purported counterclaims was not relevant or pertinent to the matter in controversy and had no relation thereto. It may be reasonably inferred from the facts pleaded that appellees did not have reasonable or probable cause to believe the matter to be relevant or pertinent.

The demurrers should have been overruled.

Judgment reversed with instructions to overrule the demurrers, and for further proceedings not inconsistent with this opinion.

Mote, C. J., Hunter, Kelley, JJ., concur.

NOTE.—Reported in 192 N. E. 2d 493.