CHRYSLER MOTORS CORPORATION,
Appellant–Defendant,

v.

Martha Alice Padgett GRAHAM,
Appellee–Plaintiff.

No. 34A04–9308–CV–294.[1]

Court of Appeals of Indiana,
First District.

March 22, 1994.

Rehearing Denied May 27, 1994.

Susan B. Tabler, Michael L. Tooley, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Edward S. Mahoney, Corbin K. King, Lacey, O'Mahoney, Mahoney, Sager & King, Kokomo, for appellee.

BAKER, Judge.

Appellant-defendant Chrysler Motors Corporation seeks a determination of whether statements made in an affidavit filed in an attachment proceeding constitute privileged communication upon which no action for defamation will lie.

### FACTS

Appellee-plaintiff Martha Alice Padgett Graham is the widow of former Chrysler employee Emmett Padgett. Upon Padgett's death, Chrysler began paying Graham spousal benefits pursuant to certain retirement plans. Under the plans, a surviving spouse is entitled to benefits if the spouse was married to the Chrysler employee on the date of his death and for one continuous year prior thereto. Chrysler failed to notice from Graham's benefit application that she did not meet the one-year marriage requirement. After paying a lump-sum benefit and over three years of monthly benefits, Chrysler's benefit plan administrator Ronald Gurdak learned from one of Padgett's children from a former marriage that on the date of Padgett's death, he and Graham had been married for less than one year. Padgett and Graham were married on October 14, 1984, and Padgett died on October 5, 1985.

Upon discovering that Graham was mistakenly paid benefits to which she was not entitled, Gurdak sought advice from Chrysler's legal department on how to proceed. Deborah Hunter told Gurdak that he had a fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), to seek recovery of the funds and restore them to the rightful

1. This case was diverted to this office on February 14, 1994, by direction of the Chief Judge.

beneficiaries, Padgett's children. Accordingly, Gurdak sent Graham a letter explaining the error and advising her that her monthly pension benefits were being terminated. Hunter sent Graham a second letter asking that she repay $72,000 in benefits that were mistakenly paid to her. Graham telephoned Hunter and told her that she would be unable to repay the money because she no longer had it, and that she was living off the pension.

Chrysler subsequently conducted an investigation into Graham's assets. The investigation revealed that Graham had received $40,-000 in pension benefits from her own employer, and was expected to receive $22,000 from Padgett's estate. Chrysler also learned that Padgett's obituary listed the marriage date as September 14, 1984, and that Graham had testified under oath in an unrelated proceeding that her marriage to Padgett occurred on September 14, 1984, rather than the true date of October 14, 1984.

Chrysler filed a complaint against Graham in an effort to recover the funds mistakenly paid to her. In connection with that proceeding, Chrysler sought to attach Graham's assets under IND.CODE 34–1–11–1 (1983).[2] In compliance with IND.CODE 34–1–11–4.1 (1983), Chrysler filed an affidavit executed by Gurdak which stated in part:

5. That affiant believes that [Graham] has sold, conveyed or otherwise disposed of her property subject to execution with the fraudulent intent to cheat, hinder or delay [Chrysler's] collection of said monies.

6. That as affiant is informed and verily believes, the Defendant is about to sell, convey or otherwise dispose of her property subject to execution with the fraudulent intent to cheat, hinder or delay [Chrysler's] collection of said sums of money.

Record at 13.[3] Six days after Chrysler filed the affidavit, Graham brought this separate action for defamation based upon the above statements, seeking both compensatory and punitive damages.

Chrysler twice moved for summary judgment, and at the jury trial, twice moved for judgment on the evidence, claiming that the affidavits were entitled to an absolute privilege because they were filed in connection with a judicial proceeding. In turn, the trial court denied each motion. The jury found in favor of Graham and awarded her $65,000 in compensatory damages. After filing a mandatory motion to correct errors challenging the excessiveness of the damages, which the trial court denied, Chrysler now appeals.

On cross-appeal, Graham challenges the trial court's determination that the affidavit did not accuse Graham of the commission of felony fraud, and the propriety of withdrawing the issue of punitive damages from the jury.

Because the dispositive issue in this case is whether the absolute privilege applies to

---

2. I.C. 34–1–11–1 provides:

The plaintiff, at the time of filing his complaint, or at any time afterwards, may have an attachment against the property of the defendant, in the cases and in the manner hereinafter stated, where the action is for the recovery of money:
First. Where the defendant, or one of several defendants, is a foreign corporation or a nonresident of this state;
Second. Where the defendant, or one of several defendants, is secretly leaving or has left the state, with intent to defraud his creditors; or,
Third. So conceals himself that a summons can not be served upon him; or,
Fourth. Is removing or about to remove his property subject to execution, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim; or,
Fifth. Has sold, conveyed or otherwise disposed of his property subject to execution, or suffered or permitted it to be sold with the fraudulent intent to cheat, hinder or delay his creditors; or,
Sixth. Is about to sell, convey or otherwise dispose of his property subject to execution, with such intent. Provided, That the plaintiff shall be entitled to an attachment for the causes mentioned in the second, fourth, fifth and sixth specifications of this section, whether his cause of action be due or not.

3. I.C. 34–1–11–4.1 provides:

The plaintiff, or some person in his behalf, shall make an affidavit showing:
(1) the nature of the plaintiff's claim;
(2) that it is just;
(3) the amount which he believes the plaintiff ought to recover; and
(4) that there exists in the action some one of the grounds for an attachment above enumerated.

Gurdak's affidavit, we need not reach the other issues raised.

## DISCUSSION AND DECISION

 Indiana law affords an absolute privilege to statements made in the course of a judicial proceeding. *Wilkins v. Hyde* (1895), 142 Ind. 260, 261, 41 N.E. 536, 536. This privilege, however, is abrogated when the statements are not relevant and pertinent to the litigation or do not bear some relation thereto. *Stahl v. Kincade* (1963), 135 Ind.App. 699, 707, 192 N.E.2d 493, 497, *trans. denied.* As both parties recognize, whether a particular communication is relevant and pertinent to the litigation is purely a legal determination for the court. *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 997, *trans. denied.*

The absolute privilege is grounded in the idea that:

> [P]ublic interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged. 50 Am.Jur.2d *Libel & Slander* § 231.

*Id.* at 997. To further this policy, courts favor a liberal application of the privilege. *Id.; Stahl,* 135 Ind.App. at 707, 192 N.E.2d at 497.

 Our analysis begins with a determination of whether Gurdak's affidavit was absolutely privileged in the first instance. We are guided by our supreme court's original adoption of the privilege in *Wilkins.* There, Marion County officials filed a statutorily prescribed petition seeking to obtain custody of Wilkins' minor children. In finding that the petition was entitled to an absolute privilege, our supreme court stated:

> No actual malice is shown in the complaint, but it appears that the words were written and published in a petition expressly authorized by statute, to be filed in a proceeding in court, and that the alleged libelous words were but the statutory grounds,

which if found to exist, would warrant the court, under this statute, to award the custody of appellant's children to said board.

*Wilkins,* 142 Ind. at 261, 41 N.E. at 536. Just as the county board's petition was authorized by statute, so too was Gurdak's affidavit.

Graham makes the very valid point that we should avoid interpreting *Wilkins* in a manner that would permit litigants to hide behind the absolute privilege by merely reciting statutory language without regard to whether the allegations as made against a particular person are true. We can avoid such an interpretation because the statutory framework is designed to protect against such instances without disturbing the absolute privilege. IND.CODE 34–1–11–5 (1983) provides:

> The plaintiff, or some one in his behalf, shall execute a written undertaking, with sufficient surety, to be approved by the clerk, *payable to the defendant,* to the effect that the plaintiff will duly prosecute his proceeding in attachment, *and will pay all damages which may be sustained by the defendant, if the proceedings of the plaintiff shall be wrongful and oppressive.*

(Emphasis added). The statute unequivocally states that plaintiffs may properly seek and recover all damages arising out of wrongful attachment proceedings. Properly interpreted, the term "all" includes those damages to a person's reputation arising out of a wrongful attachment proceeding. The legislature has preserved inviolate the absolute privilege afforded affidavits filed in attachment proceedings by requiring plaintiffs to post a bond and by further providing injured parties the right to recover thereon. Given this statutory framework, Graham's ability to recover for any damage to her reputation is adequately protected.

Our analysis is not yet complete because we must still decide whether the affidavit was relevant and pertinent to the litigation. If it was, then there is no basis for a defamation action. If it was not, then the absolute

privilege is lost and Chrysler must answer to Graham for the defamation. In connection with the inquiry into a statement's relevancy and pertinency to the underlying litigation, it has been said that:

> 'An allegation to which privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented by the pleadings, but it must be legitimately related thereto, or so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial. *Irrelevancy is not shown by the fact that it was unnecessary to plead the offending allegation ...* and the fact that the alleged libelous matter was stricken from the pleading as irrelevant has been held not to destroy the privilege ... where it otherwise satisfies the requirement of nontechnical relation to the subject of the controversy.' 50 Am. Jur.2d *Libel & Slander* § 239 (emphasis added).

*Briggs,* 452 N.E.2d at 997; *see also Stahl,* 135 Ind.App. at 707–08, 192 N.E.2d at 497.

Of the cases determining the relevancy and pertinency of statements made in judicial proceedings, *Stahl* is the only case in which the absolute privilege was held inapplicable to the statement in controversy. There, the plaintiff sought to enjoin the defendants from maintaining a public basketball court adjacent to her property. The defamatory material came in the form of a counterclaim the defendants filed also seeking injunctive relief in connection with the plaintiff's alleged adulterous behavior with a police officer. In reversing the demurrers sustained in the defendants' favor on the plaintiff's claim for defamation, this court held that the counterclaims were not entitled to the absolute privilege because they were not pertinent or relevant to the matter in controversy and had no relation thereto. *Stahl,* at 708, 192 N.E.2d at 497.

*Stahl* is easily distinguished from the present case. The defamatory material there was "palpably irrelevant" to the underlying litigation because the plaintiff's alleged adulterous behavior had no relationship whatsoever to the underlying property dispute. A determination of whether to enjoin the defendants from maintaining a basketball court would not have prompted an inquiry at trial into the plaintiff's social behavior. Here, on the other hand, Chrysler instituted an action for money based upon the undisputed fact that Chrysler erroneously paid Graham benefits. Accordingly, it had the right to pursue an attachment order under I.C. 34–1–11–1. Determination of Chrysler's request for attachment was inextricably related to its efforts to retrieve the mistakenly paid benefits. For this reason, Gurdak's affidavit was relevant and pertinent to the litigation, and thus, was entitled to the absolute privilege.

In an attempt to distinguish the cases in which the absolute privilege was held applicable to statements made in judicial proceedings, Graham argues that unlike the present case, the defamatory material in those cases was necessary to form the issues in the case. Here, Graham argues, the attachment proceeding was ancillary to the suit to recover money and was not necessary to form the issues in Chrysler's underlying action to recover the mistakenly paid benefits. On a prior occasion, we have specifically rejected that argument and declined to determine the relevancy and pertinency of a statement based upon the necessity of its filing. *Briggs,* 452 N.E.2d at 997 ("We do not agree with Briggs' contention that because the Petition to Discharge was not necessary to accomplish Smoker's desire to terminate the conservatorship, the petition was not privileged.").

We hold that, as a matter of law, Gurdak's affidavit was absolutely privileged and was relevant and pertinent to Chrysler's suit to recover the mistakenly paid benefits. Accordingly, we reverse the trial court's entry of judgment on the jury's verdict, and remand with instructions to vacate said judg-

ment and enter judgment in Chrysler's favor.[4]

Judgment reversed and remanded.

ROBERTSON and NAJAM, JJ., concur.

---

4. As a final note, we would like to emphasize the importance of Ind.Appellate Rule 4(B)(6). Disposition of this matter involved a pure question of law, the early determination of which would have promoted a more orderly disposition of the case. Yet, Chrysler's motion to certify the denial of its motion for summary judgment for an interlocutory appeal was denied. While we recognize that we now have the benefit of hindsight, it cannot go unnoticed that a substantial amount of time and effort could have been saved had this matter been before us as an interlocutory appeal.