

**FILED**

Aug 09 2017, 5:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Thomas N. Eckerle
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Douglas D. Church
Alexander P. Pinegar
Kevin S. Smith
Church Church Hittle & Antrim
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas N. Eckerle,

*Appellant-Plaintiff,*

v.

Katz & Korin, P.C. and Michael
W. Hile,

*Appellees-Defendants*

August 9, 2017

Court of Appeals Case No.
49A02-1608-CT-1894

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1510-CT-35444

**May, Judge.**

[1]    Thomas N. Eckerle ("Eckerle") appeals the trial court's grant of partial summary judgment in favor of Katz & Korin, P.C. ("Katz") and Michael W. Hile ("Hile") (collectively, "Law Firm"). He presents several issues for our review, one of which we find dispositive: whether the trial court erred when it

determined Law Firm was immune from liability under the absolute privilege doctrine for any statements made about Eckerle. We affirm.

# Facts and Procedural History

[2] This action was born of a more-than-a-decade-long series of claims centered around a failed utility company, the history of which is required to understand the defamation issues raised herein. In 1995, Newland Resources, LLC ("Newland") and Branham Corp. ("Branham") entered into an agreement to form Boone County Utilities, LLC ("BCU"), a "small sewer/water utility to service real estate developments in the southeastern corner of Boone County, Indiana." (Br. of Appellant at 17.) BCU was subject to enforcement proceedings before the Indiana Utility Regulatory Commission ("IURC") and subsequently filed for bankruptcy in 2003.

[3] Eckerle is an attorney licensed to practice law in Indiana and represented one of BCU's investors, White River Venture Partners, LLC ("White River") in BCU's bankruptcy proceedings. The bankruptcy court ordered and consummated the sale of BCU's utility assets to the Town of Whitestown and confirmed BCU's liquidation plan. The liquidation plan "called for BCU's creditors to be paid 100% of their allowed claims and for the distribution of $3.0 million to Newland, BCU's sole member, per its allowed equity interest." (*Id.*)

[4] Branham filed bankruptcy in 2004. Eckerle represented Newland in those bankruptcy proceedings. At the same time, Branham sued Newland and

various defendants related to the BCU transaction, including Eckerle, in Boone County, alleging conversion, conspiracy, and breach of contract ("Claim 517"). The claims alleging conversion and conspiracy were dismissed, and Branham was awarded approximately $390,000 from Newland on its breach of contract claims.

[5]     In 2011, Branham, represented by Stewart & Irwin ("S&I"), sued Newland and thirty-one other defendants, including Eckerle, in Boone County ("Claim 001"), asserting criminal offenses related to distribution of certain BCU-related funds as part of BCU's bankruptcy proceedings, from which Branham claimed it was entitled to treble damages under the Indiana Crime Victim's Recovery Act ("ICVRA") and Indiana's Racketeer Influenced and Corrupt Organizations Act ("RICO") statutes. Via a Proceedings Supplemental, Branham also sought to collect from the defendants in Claim 517, including Eckerle.[1] Branham was not successful in any of its actions in Claim 001 or the Proceedings Supplemental to Claim 517.

[6]     On April 12, 2012, BCU reopened its bankruptcy action and filed a complaint ("AP-128") against Branham and S&I, asking the bankruptcy court to declare its rulings in the BCU bankruptcy had a preclusive effect relating to the claims set forth in Claim 517 and Claim 001. In May 2012, Law Firm entered its appearance for S&I and, in June 2012, filed a motion to dismiss S&I from the

_____

[1] It is unclear why Eckerle was named as a defendant in Claim 517, as the record does not include a copy of the order in that case.

proceedings. On October 4, 2012, the bankruptcy court granted S&I's motion to dismiss without prejudice, subject to BCU's right to later seek sanctions against S&I.

[7] BCU filed an amended complaint in bankruptcy court on August 5, 2013. On October 7, 2013, Law Firm filed an appearance for "Stewart & Irwin, PC, unnamed Defendant." (Appellee's App. Vol. III at 66.) Law Firm also filed a motion to dismiss BCU's amended complaint. On October 21, 2013, Eckerle moved to intervene as a plaintiff in AP-128. In his motion to intervene, Eckerle alleged:

> One other cause for my intervention in this AP relates directly to Mr. Hile's defamatory, despicable and completely unfounded charges of bankruptcy fraud leveled against me during the August 22, 2012 Hearing before this Court. At that hearing, Mr Hile stated that, "What occurred respecting Newland" should be characterized as "monkeyshines." The context of that statement clearly reveals that, included in the "monkeyshines," which occurred concerning Newland, were the actions "of the professionals who appeared in this Court [the bankruptcy court]," referencing me specifically. Mr. Hile followed that "monkeyshines" characterization with the following unabashed statement with respect to the real reason I was allegedly hired by Newland:

>> **Mr. Hile:** ... They [the Eckerle Defendants] were professionals retained by Newland to assist it in, pardon my liberal description of its terms, its fraudulent transfer of assets. "Intentional fraudulent transfer of assets."

Mr. Hile's *per se* defamation of me is actionable and will be the subject of future litigation against Mr. Hile and his firm. The relevance of Mr. Hile's statements to this AP is that they represent yet another assault on this Court's May 16, 2005 Order, which authorized me to perform the services, which Mr. Hile now characterizes as "monkeyshines" and participation in "intentional fraudulent transfer of assets." At the time that Branham had sought to disqualify my representation of Newland and its members in connection with the claims allowance proceeding, Branham had argued that my actions as Newland's attorney were **merely** "in violation of the Adversary Stay, in violation of Branham's due process rights and in callous disregard for Newland's lack of standing." (See Docket 337, paragraph no. 8.) Judge Metz's May 16, 2005 Order completely rejected these charges. In defiance of Judge Metz's May 16, 2005 Order, Mr. Hile is essentially renewing Branham's objections to my participation in the Branham's claims allowance proceedings, while now upping the ante by claiming "monkeyshines" and actual fraud. My intervention will allow Branham, Stewart & Irwin, Katz & Korin, Mr. Wray and Mr. Hile to prove their fiendish allegations against me and to explain why these allegations do not contradict this Court's May 16, 2005 Order.

(Appellant's App. Vol. V at 171-2) (errors and emphasis in original). Eckerle also filed a third-party complaint on October 21, 2013, further discussing his claims of defamation and requesting sanctions against Law Firm.

[8] On November 4, 2013, Law Firm filed S&I's response to Eckerle's Motion to Intervene ("November 4 Document"). On November 12, 2013, the bankruptcy

court denied Eckerle's Motion to Intervene and his third-party complaint.[2] Eckerle subsequently filed a motion to strike a footnote in the November 4 Document, and on November 27, 2013, the bankruptcy court entered an order striking the November 4 Document "since it was filed by an entity not a party to this adversary proceeding." (Appellant's App. Vol. VI at 181.)[3]

[9] On October 26, 2015, Eckerle filed the action against Law Firm that is at issue in this appeal. In that complaint, he alleged multiple counts of defamation, one count of invasion of privacy, and one count of abuse of process. Eckerle alleged the following statements, made by Law Firm as part of the November 4 Document, were libelous:

> (a) "To be clear, counsel's statements in this adversary proceeding have always been aimed at explaining to this Court . . . that probable cause exists for all allegations contained therein. . . . "

> (b) "The point of this discourse was to establish that probable cause existed for Branham, through its counsel Stewart & Irwin, to state the claims in Boone County . . . "

---

[2] On November 27, 2013, the bankruptcy court vacated its order dismissing Eckerle's third party complaint after Eckerle explained to the court the filing was meant to be an exhibit to his Motion to Intervene.

[3] In 2014, Eckerle filed an action against Branham and S&I for malicious prosecution ("Claim 683"). The parties settled those issues on January 13, 2015.

     (c) "[P]robable cause existed for all claims asserted by Branham in Boone County."

(Appellant's App. Vol. III at 105) (emphasis in original omitted). For each defamation, Eckerle provided "the meanings ascribed to them by context." (*Id*.) For example, Eckerle incorporated language from Claim 001 and Claim 517 wherein Branham accused the defendants in each action of theft, conversion, receiving stolen property, fraud, deception, ICVRA liability, and RICO activity. The "context" statements generally referenced "the defendants," (*e.g.*, *id*. at 106), in the individual claim and not Eckerle by name, though Eckerle was a defendant in each claim.

[10] Eckerle also alleged Law Firm committed libel when it stated, as part of the November 4 Document:

> [C]ounsel stated that . . . Newland had undertaken 'Monkey shines' to rid it of all of its assets (nearly $2.4 million transferred from BCU) and left Newland bereft to pay Branham as a judgment creditor. Counsel further advised . . . that professionals were retained and paid by Newland, Newland intentionally fraudulently transferred all of its assets to, among others, its insiders and the Boone County Complaint asserted all possible claims that could derive from those facts.

(*Id*. at 113) (footnotes omitted). Eckerle explained the quote was a "re-publication by Mr. Hile of his defamatory statement at the August 22, 2012 Hearing, albeit with greater specificity[.]" (*Id*.) That entire exchange, as quoted by the trial court in its order, included the statements:

MR. HILE:  Your honor, if you read the [Claim 001] complaint fully --

THE COURT: Yes, okay.

MR. HILE: -- I will grant you that in the one particular paragraph there are some real quotable quotes but it's in the context of three or four paragraphs before that where it talks about distributions to Newland, which Newland then spun off to third parties and then it says such distributions, in that final phrase which catches the eye and goes whoa.  It says such distribution.  If you look at all the parties named here --

THE COURT:  Well, some of the garnishee defendants that apparently are being -- they're having to answer for the monies that were paid, were they paid pursuant to the court order in this bankruptcy?

MR. HILE:  Your Honor, I do not believe that is the case at all.  They were professionals retained by Newland to assist it in, pardon my liberal description of its terms, its [sic] fraudulent transfer of assets.  Intentional fraudulent transfer of assets.

(Appellant's App. Vol. II at 17.)

[11]     Finally, Eckerle alleged Law Firm committed libel when it stated in a footnote of the November 4 Document:

Mr. Eckerle asserts that payments were made to 'his firm' (Henderson Daily Withrow & Devoe) and he only received funds from 'his firm.'  In its due diligence, however, Branham discovered a 1099 made out to Thomas N. Eckerle for his work post-petition after the closure of Henderson Daily Withrow & Devoe, a copy of which is attached as Exhibit 2.

(Appellant's App. Vol. III at 115.)

[12] Law Firm filed its response, raising ten affirmative defenses, including absolute privilege. On April 12, 2016, the parties filed cross motions for partial summary judgment. The trial court heard oral argument on the cross motions on July 25, 2016. On August 16, 2016, the trial court entered an order granting Law Firm's motion for partial summary judgment and denying Eckerle's motion for partial summary judgment.[4]

# Discussion and Decision

[13] Our standard of review for summary judgment is well-established:

> We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the

---

[4] The trial court granted summary judgment on Eckerle's defamation and invasion of privacy claims, but did not decide his abuse of process claim against Law Firm. However, the trial court stated in its order, pursuant to Indiana Trial Rule 54(B): "[F]inding no reason for delay, the Court directs entry of final judgment in [Law Firm's] favor on [Eckerle's] defamation and invasion of privacy claims." (Appellant's App. Vol. II at 13.) Therefore, we have jurisdiction over the appeal. *See* Indiana Rules of Appellate Procedure 5(A) (the Court of Appeals has jurisdiction over appeals from final judgments).

undisputed material facts support conflicting reasonable inferences." *Id*. (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id*. at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Therefore, for the trial court to properly grant summary judgment, the movants must have "made a *prima facie* showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact." *Cox v. Mayerstein-Burnell Co., Inc.*, 19 N.E.3d 799, 804 (Ind. Ct. App. 2014). We will affirm a trial court's decision on summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.*, 648 N.E.2d 1194, 1196 (Ind. Ct. App. 1995), *trans. denied*.

[14] The trial court granted summary judgment in favor of Law Firm because it concluded Law Firm was immune from liability under the absolute privilege

doctrine and the statements made were not *per se* defamatory.  As the trial court's conclusion regarding absolute privilege is dispositive, we address only that issue.

[15] The absolute privilege doctrine applies to defamation claims, torts related to defamation, and torts relying upon defamatory statements as proof of wrongdoing.  *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 247 (Ind. Ct. App. 2013), *trans. denied*.  Our Indiana Supreme Court explained in *Hartman v. Keri*:

> Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements.  *Wilkins v. Hyde*, 142 Ind. 260, 261, 41 N.E. 536, 536 (1895); *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998). "The reason upon which the rule is founded is the necessity of preserving the due administration of justice," *Wilkins*, 142 Ind. at 261, 41 N.E. at 536, by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims.  *Van Eaton*, 697 N.E.2d at 494 (citing *Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983)).

883 N.E.2d 774, 777 (Ind. 2008).

[16] Regarding immunity because of absolute privilege, the trial court found and concluded:

> 18.  The Defendants' statements were made in a judicial proceeding, namely an adversary proceeding in the Boone County Utilities LLC ("BCU") Chapter 11 Bankruptcy, which was filed in the U.S. Bankruptcy Court for the Southern District of Indiana with the caption *Boone County Utilities, LLC v. The*

*Branham Corporation*, under cause number 12-50128 ("AP-128"). Def. Ex. 1.

19. The Defendants' statements were made in AP-128 on behalf of a client, Steward & Irwin, P.C. *See* Def. Ex. 1 at docket entries #10, #30, #49, #59; Def. Ex. 5; Def. Ex. 14.

20. The Defendants' statements in their November 4, 2013, *Response, see* Def. Ex. 14, were "relevant and pertinent" to the litigation as that standard is applied under Indiana law, including the authorities set out above. The Defendants' statements addressed issues that were raised by Plaintiff's Motion to Intervene in AP-128 and the proffered Third Party Complaint he filed in AP-128. *See* Def. Ex. 12; Def. Ex. 13. They also addressed issues raised in BCU's Amended Complaint, *see* Def. Ex. 8, and in the Defendants' motion to dismiss "Stewart & Irwin, PC, unnamed Defendant" from BCU's Amended Complaint. *See* Def. Ex. 11.

21. Similarly, Defendants' statements during the August 22, 2012, hearing before the Bankruptcy Court, *see* Def. Ex. 5, were relevant and pertinent. They addressed issues raised in BCU's original complaint, *see* Def. Ex. 2, and Defendants' motion to dismiss Stewart & Irwin, PC, from the original complaint, which was the motion the Bankruptcy Court heard on August 22, 2012. *See* Def. Ex. 1 at docket entry #30; Def. Ex. 3; Def. Ex. 5.

22. Plaintiff argues the Defendants' November 4, 2013, written statements were not protected by absolute privilege because, he contends, at that time Stewart & Irwin, PC, was not a party to AP-128. Based on the undisputed evidence, the Court concludes that based on the procedural history and context of AP-128 the Defendants were "actors" in AP-128 as of November 4, 2013. *Cf. Hartman*, 883 N.E.2d at 777 (stating absolute privilege protects "actors in judicial proceedings").

23. Plaintiff argues the Defendants' November 4, 2013, statements were not protected by absolute privilege because, he contends, they were not within the parameters set out by the Bankruptcy Court in its October 4, 2012 order. *See* Def. Ex. 7. However, that order did not define the parameters of absolute privilege for this case. Furthermore, the Court concludes the Defendants' statements were legitimately related to the subject matter of AP-128 and that they may have become the subject of inquiry in AP-128. *See Briggs*, 452 N.E.2d at 997.

24. Plaintiff argues the Defendants' November 4, 2013, statements were not protected by absolute privilege because they were subsequently struck by the Bankruptcy Court and, he contends, Defendants should have filed a motion for leave to respond to his motion to intervene. However, undisputed Indiana law holds absolute privilege is not lost because a statement was deemed unnecessary to the litigation or struck if the statement "otherwise satisfied the requirement of nontechnical relation to the subject of the controversy." *Id.; see also Estate of Mayer*, 998 N.E.2d at 249 (stating absolute privilege applied even though defendant had "used an incorrect procedural vehicle").

25. In sum, in its determination of whether absolute privilege applies, which is a question of law, the Court concludes the Defendants' statements could not be deemed "so palpably irrelevant to the subject matter of the case that no reasonable person could doubt their irrelevancy and impropriety." *Id.* at 247. That is standard to apply under Indiana law, and therefore, absolute privilege applies to the Defendants' statements, barring Plaintiff's defamation claims.

26. Plaintiff argues for a change in the law regarding absolute privilege. The Court concludes that Plaintiff has not articulated justifications that persuade this Court that Indiana's long-standing absolute privilege doctrine should be modified.

27.  Defendants are entitled to summary judgment on Plaintiff's defamation claims on the grounds of absolute privilege.

28. It is undisputed that Plaintiff's invasion of privacy claim is derivative of his defamation claims and based on statements made in court proceedings.  *See, e.g.*, Complaint ¶ 29 ("The facts supporting [the invasion of privacy] claim are identical to those supporting Mr. Eckerle's defamation claims."); ¶ 131 ("[M]r. Eckerle's false light claim is, as the term 'false' suggests, based upon defamatory statements, which are untrue.").  Therefore, absolute privilege bars Plaintiff's invasion of privacy claim.  Defendants are entitled to summary judgment on Plaintiff's invasion of privacy claims on the grounds of absolute privilege.

(Appellant's App. Vol II at 19-21.)[5]

[17]  Eckerle attacks the trial court's decision regarding absolute privilege on a number of fronts, including relevance, non-party status, and filing status of certain documents.  We address each of these arguments below.

### *Relevance*

[18]  For immunity from liability to exist based on absolute privilege, the statement in question must be "relevant and pertinent to the litigation or bear some relation thereto."  *Estate of Mayer*, 998 N.E.2d at 247 (*quoting Stahl v. Kincade*, 135 Ind. App. 699, 707, 192 N.E.2d 493, 497 (1963)).  Eckerle argues the

---

[5] The trial court made extremely detailed findings regarding this matter and it has greatly assisted our review of this case. We commend the trial court for its efforts.

alleged defamatory statements were not relevant to AP-128. However, Eckerle states in his complaint the alleged defamatory statements

> were published by the Defendants in a document entitled "Stewart & Irwin, P.C.'s Response in Opposition to Thomas N. Eckerle's Motion to Intervene as Party Plaintiff in The Adversary Proceeding" (the "Defamatory Document"), which the Defendants authored and filed electronically in AP-128 on November 4, 2013, . . . the full context of each of the Defendants' defamatory statements in the Defamatory Document, as quoted in the counts below, include (a) the Defamatory Document in AP-128; (b) "all" [sic] of the allegations of the Court 001 Complaint for Damages (which was an exhibit to New-BCU's Amended Complaint in AP-128); (c) "all" [sic] of the allegations in the "Motion for Proceedings Supplemental" in Cause 517 (which was an exhibit to New-BCU's Amended Complaint in AP-128); Mr. Eckerle's Motion to Intervene in AP-128; and, (e) the transcript of the August 22, 2012 Hearing in AP-128. All such documents are intrinsic parts of AP-128 and constitute the full context of the Katz Firm's and Mr. Hile's defamatory statements in AP-128.

(Appellant's App. Vol. III at 99-100) (emphasis in original omitted). In his motion for partial summary judgment and response to Katz and Hile's motion for partial summary judgment, Eckerle attempts to parse and remold the language of the law to fit his argument that the alleged defamatory statements, were not related to AP-128, despite asserting in his complaint that they were "intrinsic parts" of AP-128. Eckerle cannot have it both ways.

[19] In his attempt to narrow the definition of relevancy as it pertains to absolute privilege, Eckerle stated in his April 12, 2016, motion:

The "relevance and pertinence" requirements have been watered down to such a degree that the rule now is that the defamatory statement "must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." Nonetheless, to qualify for the privilege, the statement must be "legitimately related" to the case and "pertinent" enough that it may become the subject of inquiry in the court of the trial.

(Appellant's Supp. App. Vol. II at 105 n.70.) For that statement, Eckerle relies on *Stahl*, 192 N.E.2d at 496-7, 135 Ind. App. at 706-7, in which we held the defamatory statements made during the proceedings were not protected by absolute privilege because they were not relevant to the matter before the court. *Stahl* is distinguishable.

[20] In *Stahl*, the plaintiff, Stahl, sought to enjoin the Pettys from locating and operating a basketball court on the Pettys' property adjacent to Stahl's property. The complaint and associated pleadings alleged there were also noise violations and trespassing issues. The Pettys counterclaimed, alleging Stahl was in an adulterous relationship with a local policeman and such behavior "constitute[d] a private and public nuisance and depreciate[d] the value of property in the neighborhood." *Id*. at 494, 702. The Pettys requested the trial court enjoin Stahl "from further adulterous entertainment of said married man." *Id*.

[21] Stahl moved to have the Pettys' counterclaim stricken from the record, which the trial court granted. The Pettys again filed a counterclaim alleging the Pettys "erected the basketball court and encouraged its use by the youth of the neighborhood in order to distract their attention from [Stahl's] activities and

prevent further depreciation of the morality of said children[.]" *Id.* The trial court struck the counterclaim from the record. Stahl amended her complaint to include a libel claim based on the Pettys' allegations in their counterclaims. The trial court enjoined the Pettys from trespassing on Stahl's property, but issued a demurrer denying Stahl's libel claim, citing absolute privilege.

[22] Stahl appealed, arguing the Pettys' libelous statements were not protected by absolute privilege because they were not relevant to the proceedings before the trial court. Our court agreed, holding the Pettys' allegations in their counterclaims were "not relevant or pertinent to the matter in controversy and had no relation to the matter in controversy . . . . It may be reasonably inferred from the facts pleaded that [the Pettys] did not have reasonable or probable cause to believe the matter to be relevant or pertinent." *Id.* at 497, 708. In so holding, our court likened the facts of *Stahl* to those in a Massachusetts case, where in his answer to a complaint regarding recoupment of rent, the defendant accused the plaintiff "of gambling during office hours and allowing a woman of bad reputation to frequent his office[.]" *Id.* (citing *Barnett v. Loud*, 226 Mass. 447, 449, 115 N.E. 767, 768 (1917)). The *Barnett* court concluded the accusations in the answer were not relevant or pertinent to the recoupment action filed.

[23] The facts of this case are distinguishable. Here, the alleged defamatory statements related directly to litigation Eckerle mentioned in his Motion to Intervene, as well as litigation underlying AP-128. Unlike in *Stahl*, the statements refer to actions which allegedly occurred as part of the related

litigation, such as the behavior of Eckerle during certain parts of the proceedings, not a matter outside of the court's consideration, like the adultery allegations in *Stahl*. As is evidenced in our recitation of the facts, Claim 527, Claim 001, and AP-128 are inextricably linked, as the claims are the result of BCU's bankruptcy, from which AP-128 stems. Based on this interconnectedness and the relationship between the alleged defamatory statements and actions taken as part of the various legal matters, we conclude the statements at issue are relevant and pertinent to AP-128, and thus that prong of the absolute privilege analysis is satisfied. *See Chrysler Motors Corp. v. Graham*, 631 N.E.2d 7, 11 (Ind. Ct. App. 1994) (concluding an affidavit containing alleged defamatory statements filed as part of a request for an attachment order in a collection case was relevant to collection proceedings for the purposes of absolute privilege), *reh'g denied*, *trans. denied*.

### Non-Party Status

Eckerle argues absolute privilege does not apply to the statements made as part of AP-128 because neither Eckerle or Law Firm were part of a "privileged class" as described in *Wilkins v. Hyde*:

> It is well settled by many authorities, that there are occasions upon which words may be spoken or written of a person, whereby the implication of malice, which ordinarily arises from the words themselves, is destroyed. Among this privileged class or occasion is a proceeding in due course of law.

142 Ind. 260, 261, 41 N.E. 536, 536 (1895).  Our Indiana Supreme Court did not indicate in *Wilkins* the specific members of this "privileged class" but in that case the statement was made by the plaintiff, the board of children's guardians. *Id*. at 260, 41 N.E. at 536.

[25]  In support of his argument, Eckerle also cites *Aafco Heating & Air-Conditioning Co. v. Northwest Publications, Inc.*, 162 Ind. App. 671, 321 N.E.2d 580 (1974), *reh'g denied*, *cert. denied*, 424 US. 913 (February 23, 1976), which discusses absolute privilege in passing *dicta*, stating absolute privilege "attaches to judges, attorneys, parties, and witnesses in connection with a judicial proceeding."  *Id*. at 674, 321 N.E.2d at 583.  The opinion then goes on to discuss the privilege afforded journalists outside of a judicial proceeding.  Additionally, Eckerle cites *Raybestos Products Co. v. Younger*, 54 F.3d 1234, 1245 (7th Cir. 1995), which applied Indiana law and stated Indiana courts have never applied absolute privilege to "statements made prior to a judicial proceeding, or as in this case, to trial preparation material."  *Id*.  Finally, Eckerle cites *Medical Informatics Engineering, Inc. v. Orthopaedics Northeast, P.C.*, 458 F. Supp. 2d 716, 728 (N.D. Ind. 2006), which applied Indiana law and stated: "Although Indiana Courts recognize the litigation in regards to communications made *in the course of judicial proceedings*, they have not extended that privilege to communications made preliminarily to a *proposed* judicial proceeding."  *Id*. (emphasis added).

[26]  In their interpretations of Indiana law, *Raybestos* and *Medical Informatics* cite *Chrysler Motors*, which relies partially on *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983), *reh'g denied*, for an

explanation of those entitled to invoke the absolute privilege. In *Briggs*, we repeated the rule set forth in *Aafco* concerning those judicial actors who were privileged to make defamatory statements as part of a judicial proceeding, as long as those statements were relevant and pertinent to the case. However, we also added the reason underlying the absolute privilege doctrine is that

> public interest in the freedom of expression by *participants* in judicial proceedings, uninhibited by the risk of the resultant suits for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged.

*Id*. (emphasis added).

[27] In 1998, we revisited the absolute privilege doctrine in *Van Eaton v. Fink*, 697 N.E.2d 490 (Ind. Ct. App. 1998), *reh'g denied*. There, we examined absolute privilege as it related to witnesses and relied upon Restatement (Second) of Torts Section 588, which states, in relevant part: "As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or *possible party* to the proceeding." *Id*. at cmt. e (emphasis added).

[28] As stated in *Briggs*, Indiana courts favor a "liberal rule" when applying absolute privilege. 452 N.E.2d at 997. Here, S&I was originally a party to AP-128, and was subsequently dismissed without prejudice to allow BCU to pursue sanctions against S&I for its representation of Branham in the earlier

bankruptcy action. Law Firm served as counsel for S&I throughout the proceedings. S&I re-entered AP-128 as a non-party following BCU's amended complaint. In his Motion to Intervene, Eckerle indicated he should be able to intervene in AP-128 to force S&I to prove its "fiendish allegations" against him. (Appellant's App. Vol. V at 171-2.) Considering our historically liberal approach, we conclude relevant and pertinent statements made by an entity who was first a party, then a non-party who remains eligible for court sanctions, and who is implicated in another non-party's motion to intervene, are protected by absolute privilege. *See*, *e.g.*, *Briggs*, 452 N.E.2d at 997 (stating protection available to "participants," not just "parties").

### *Filing Status*

[29] Finally, Eckerle argues the statements made by Law Firm in the November 4 Document are not protected by absolute privilege because they were stricken from the record following the denial of Eckerle's motion to intervene. In *Briggs*, we stated:

> An allegation to which privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented by the pleadings, but it must be legitimately related thereto, or so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial. *Irrelevancy is not shown by the fact that it was unnecessary to plead the offending allegation . . . and the fact that the alleged libelous matter was stricken from the pleading as irrelevant has been held not to destroy the privilege . . . where*

> *it otherwise satisfies the requirement of nontechnical relation to the*
> *subject of the controversy.*

452 N.E.2d at 997 (quoting 50 Am.Jur.2d Libel & Slander § 239) (emphasis added). Thus, we conclude the statements at issue are protected by absolute privilege despite the fact they were stricken from the record in AP-128.

# Conclusion

[30] Law Firm's statements made as part of the November 4 Document were protected by absolute privilege because they were relevant and pertinent to AP-128. Therefore, the trial court did not err when it granted partial summary judgment in favor of Law Firm.

[31] Affirmed.

Brown, J., and Pyle, J., concur.