## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 14 2017, 8:34 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Thomas N. Eckerle
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Douglas D. Church
Alexander P. Pinegar
Kevin S. Smith
Church Church Hittle & Antrim
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas N. Eckerle,

*Appellant-Plaintiff,*

v.

Katz & Korin, P.C., and Michael W. Hile,

*Appellees-Defendants*

November 14, 2017

Court of Appeals Case No.
49A02-1704-CT-735

Appeal from the Marion Superior Court

The Honorable James B. Osborn, Judge

Trial Court Cause No.
49D14-1510-CT-35444

**Crone, Judge.**

# Case Summary

Attorney Thomas N. Eckerle, pro se, appeals the trial court's grant of summary judgment in favor of Katz & Korin, P.C. ("Katz"), and attorney Michael W. Hile (collectively "Appellees") on Eckerle's claim for abuse of process, as well as the denial of his cross motion for summary judgment on that claim. Because Eckerle was not a party to the process at issue, we affirm.

# Facts and Procedural History[1]

The essential facts are as follows. In 1995, Newland Resources, LLC, and The Branham Corporation "entered into a contract whereby Branham agreed to assist Newland with negotiating contracts and obtaining certifications needed to operate a waste water and water supply utility[,]" Boone County Utilities, LLC ("BCU"), which was wholly owned by Newland. Appellant's App. Vol. 3 at 146. "In return, Newland agreed to pay Branham a 'success fee' based upon the sale price ultimately paid for the utility." *Id.*

---

[1] Indiana Appellate Rule 46(A)(5) provides that an appellant's statement of the case "shall *briefly* describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court …." (Emphasis added.) Eckerle's statement of the case is ten pages long, presumes familiarity with past and present litigation, and is inappropriately argumentative. Appellate Rule 46(A)(6) provides that an appellant's statement of facts "shall describe the facts relevant to the issues presented for review" "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed[,]" and "shall be in narrative form …." Instead of presenting a coherent narrative of relevant facts, Eckerle quotes extensively from bankruptcy court orders and attempts to incorporate facts by reference to other documents, which he may not do. *Cf. Oxley v. Lenn*, 819 N.E.2d 851, 855 n.2 (Ind. Ct. App. 2004) (rejecting appellee's attempt to incorporate argument by reference to summary judgment brief filed with trial court). The statement of facts is also inappropriately argumentative. Eckerle's failures to comply with the appellate rules and his discursive writing style have made it difficult for us to decipher his arguments. Appellants' objections to Eckerle's statement of the case and statement of facts are well taken, and we appreciate their efforts to clarify the relevant factual and procedural history.

[3]     BCU was investigated by the Indiana Utility Regulatory Commission
("IURC"). In March 2003, the IURC ordered BCU to cease all payments to
Newland. Later that year, BCU filed for Chapter 11 bankruptcy. In February
2004, the IURC issued an order staying all proceedings and recognizing the
bankruptcy court's "full power and exclusive jurisdiction" to sell BCU's assets.
Appellant's App. Vol. 6 at 156. The bankruptcy court directed the sale of
BCU's assets and confirmed BCU's liquidation plan, which called for the
distribution of approximately $3,000,000 to Newland per its allowed equity
interest. Those proceeds were distributed to Newland's shareholders and
members, leaving Newland and BCU with joint assets of less than $10,000.
Pursuant to a bankruptcy court order, Eckerle was authorized to represent
Newland during the bankruptcy proceeding and receive compensation for his
services. Newland did not pay Branham its success fee.

[4]     In 2005, based on the theory that BCU's confirmed liquidation plan did not
preempt enforcement of the IURC's March 2003 order, Branham sued
Newland and other defendants (including BCU as a garnishee defendant) in
Boone Circuit Court, alleging conversion, conspiracy, and breach of contract
("Cause 517"). The conversion and conspiracy claims were dismissed. After a
jury trial on its contract claims, Branham obtained a judgment against Newland
for almost $400,000, which was affirmed on appeal. *Newland Res., LLC v.
Branham Corp.*, 918 N.E.2d 763 (Ind. Ct. App. 2009).

[5]     In 2011, Branham, represented by Stewart & Irwin ("S&I"), sued Newland and
other defendants, including Eckerle, in Boone Circuit Court, alleging criminal

offenses and seeking treble damages related to the distribution of BCU-related funds in the bankruptcy proceeding ("Cause 001"). Branham also sought to collect from the defendants in Cause 517 via a proceedings supplemental and named Eckerle as a garnishee defendant. Beginning in June 2013, Katz represented Branham in both proceedings. Ultimately, Eckerle was dismissed from Cause 517, *Branham Corp. v. Newland Res., LLC*, 44 N.E.3d 1263, 1273 (Ind. Ct. App. 2015), and was granted summary judgment in Cause 001. *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979, 994 (Ind. Ct. App. 2014).

[6] In April 2012, BCU reopened its bankruptcy proceeding and filed a complaint against Branham and S&I, asking the bankruptcy court to declare that all distributions made under the confirmed plan were legal and to impose sanctions against Branham and S&I for suing BCU in state court ("AP-128"). In May 2012, Hile (a Katz attorney) entered an appearance for S&I and filed a motion to dismiss S&I from AP-128. In October 2012, the bankruptcy court granted the motion and also ruled that any issues involving Newland's "actions upon or after receipt of the distribution" from BCU were to be decided in Boone Circuit Court. Appellant's App. Vol. 3 at 217.

[7] In August 2013, BCU filed an amended complaint. On October 7, 2013, Branham filed a counterclaim against BCU, seeking to garnish BCU's assets to satisfy Branham's judgment against Newland in Cause 517. On October 21, 2013, Eckerle filed a motion to intervene as a plaintiff against Branham. Eckerle alleged that, at an August 2012 hearing, Hile stated that Newland engaged in "monkeyshines" during BCU's original bankruptcy proceeding and

that Newland's "professionals" (which included Eckerle) were retained to assist Newland in "its fraudulent transfer of assets." Appellant's App. Vol. 5 at 101. Eckerle further alleged that his intervention would allow Branham and Appellees "to prove their fiendish allegations against [him] and to explain why these allegations do not contradict" the bankruptcy court order authorizing Eckerle to perform legal services for Newland and receive compensation for them. *Id.* at 102. Eckerle posited, "If Branham … gets its way, it will have been allowed to simply walk away from heinous charges of criminal conduct against … me, without ever having had to introduce an iota of evidence in support of those charges and without allowing … me the opportunity to defend [myself] against Branham's defamatory and outrageous accusations on the merits." *Id.* at 103.

[8] On December 23, 2013, Appellees entered an appearance for Branham in AP-128 and filed a response to Eckerle's motion to intervene, asserting that any claims that Branham might have against Eckerle were "time barred" and "dead." *Id.* at 153. The bankruptcy court denied Eckerle's motion to intervene but allowed him to file an amicus brief in which he voiced his suspicions that Branham and its attorneys wanted to keep him out of the case, obtain BCU's and Newland's claims against third parties, and then assert those claims against him in another forum. In May 2015, the bankruptcy court entered summary judgment for BCU. In August 2015, the court ordered Branham to pay almost $39,000 in sanctions to BCU's counsel, finding that Branham had "crossed the line from exploring novel theories [for reversing the bankruptcy distribution to

Newland] to harassment of BCU and manipulation of these proceedings to badger BCU." Appellant's App. Vol. 3 at 140.

[9] On October 26, 2015, Eckerle filed a 123-page complaint against Appellees alleging ten counts of defamation, one count of invasion of privacy, and one count of abuse of process, which is based solely on Appellees' actions in AP-128. *See id.* at 5 (Eckerle's complaint: "The conduct of [Appellees] specifically directed towards Mr. Eckerle in **AP-128** is the basis of Mr. Eckerle's abuse of process claim under Count XII of this Complaint."); *see also* Appellant's App. Vol. 6 at 36 (Eckerle's summary judgment memorandum: "[Appellees have] moved for summary judgment in their favor on Count XII of Mr. Eckerle's complaint, which alleges abuses by [Appellees] of the federal Bankruptcy Court processes in AP-128.").[2] Eckerle alleged that, although he was not a party to AP-128, "Branham (through its attorneys) repeatedly attempted to inject [him] into those proceedings through their defamatory statements and hectoring comments[,]" and that he was "required to maintain a constant vigil over the proceedings in AP-128, in order to protect his interests from [Appellees'] abuses." Appellant's App. Vol. 3 at 120. Eckerle further alleged that he "detected an ulterior motive in [Appellees'] seemingly innocuous attempts … to obtain a general attachment, garnishment and involuntary assignment" of BCU's and Newland's "causes of actions against third parties and against each

---

[2] In light of these unequivocal statements, Eckerle's assertion in his reply brief that his abuse of process claim is also based on Appellees' actions in Causes 517 and 001 and a third cause is not well taken.

other[,]" which could then be used as a basis for asserting "additional claims against Newland's professionals, including [himself]." *Id*. at 120, 121.

[10] In February 2016, the trial court issued a case management order that established November 1, 2016, as the deadline to file summary judgment motions, which could be filed only by leave of court. In April 2016, the parties filed cross motions for partial summary judgment on Eckerle's defamation and invasion of privacy claims. In August 2016, the trial court granted Appellees' motion and denied Eckerle's motion. Eckerle appealed, and another panel of this Court affirmed the trial court's ruling. *Eckerle v. Katz & Korin, P.C.*, 81 N.E.3d 272 (Ind. Ct. App. 2017), *modified on reh'g*, ___ N.E.3d ___, 2017 WL 4455655 (Ind. Ct. App. Oct. 6, 2017), *trans. pending*.

[11] On October 20, 2016, Appellees filed a motion for summary judgment as to one of the two elements of Eckerle's abuse of process claim: "ulterior motive or purpose[.]" Appealed Order at 3 (citing *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013), *trans. denied* (2014)). Appellees also argued that many of the alleged acts or omissions were committed by other parties and/or fell outside the two-year statutory limitation period. *See* Ind. Code § 34-11-2-4(a) (providing that an action for injury to person or character "must be commenced within two (2) years after the cause of action accrues.").

[12] On October 28, 2016, Eckerle filed a motion for enlargement of time to respond to Appellees' summary judgment motion, and the trial court gave him until January 23, 2017, to file a response. On December 27, 2016, Eckerle filed a

response to Appellees' summary judgment motion. He also filed a cross motion for summary judgment as to both the first element and the second element ("a willful use of process not proper in the regular conduct of proceedings") of his abuse of process claim, as well as to the alleged preclusive effect of findings made by the bankruptcy court regarding the legitimacy of Branham's claims and litigation tactics in AP-128. Appealed Order at 3 (citing *Estate of Mayer*, 998 N.E.2d at 256).

[13]     Appellees filed a motion to strike Eckerle's cross motion as to any issue other than ulterior motive as untimely, which the trial court granted in January 2017. In April 2017, the trial court issued a final judgment granting Appellees' summary judgment motion and denying Eckerle's cross motion. Eckerle now appeals.

## Discussion and Decision

[14]     Eckerle contends that the trial court erred in granting Appellees' motion for summary judgment and denying his cross motion for summary judgment on his abuse of process claim.[3] "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citing Ind. Trial Rule 56(C)). We review the grant or

---

[3] Eckerle also contends that the trial court erred in granting Appellees' motion to strike his cross motion for summary judgment as to any issue other than ulterior motive. Given our resolution of this appeal, we need not address this contention.

denial of a summary judgment motion de novo. *Layne v. Layne*, 77 N.E.3d 1254, 1264 (Ind. Ct. App. 2017), *trans. denied*. The filing of cross motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Roberts v. Henson*, 72 N.E.3d 1019, 1026 (Ind. Ct. App. 2017). We may affirm a grant of summary judgment on any theory supported by the designated evidence. *Alva Elec.*, 7 N.E.3d at 267.

[15] "A plaintiff claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Estate of Mayer*, 998 N.E.2d at 256 (footnote omitted). As stated above, Eckerle's abuse of process claim is based on Appellees' actions in AP-128, to which he was not a party. Eckerle cites no authority for the proposition that an abuse of process claim may be brought by someone who was not a party to the process at issue. In fact, case law from Indiana and elsewhere holds otherwise.

[16] In *Strutz v. McNagny*, 558 N.E.2d 1103 (Ind. Ct. App. 1990), *trans. denied*, Strutz was an attorney and the beneficiary of certain trusts. The trusts brought an accounting action that was maintained by Strutz, who was "not technically a party to the action[,]" rather than the trustee of the trusts. *Id*. at 1106. "Because of facts which were unearthed in that action," attorneys McNagny and Boggs filed suit "against Strutz for professional malpractice and unjust enrichment. The malpractice/unjust enrichment action was voluntarily dismissed, with the court instructing that the claims could be pursued in the original accounting action to avoid unneeded litigation." *Id*. at 1105-06. Strutz

then filed a complaint alleging, among other things, that McNagny and Boggs were guilty of abuse of process in both actions. The trial court granted the defendants' motion for summary judgment, and Strutz appealed. This Court affirmed, holding that Strutz's abuse of process claim for the malpractice/unjust enrichment action was barred by the two-year statute of limitations. As for the abuse of process claim for the accounting action, this Court stated,

> Strutz alleges that McNagny and Boggs were guilty of abuse of process … for asserting [malpractice and unjust enrichment] claims against him in the accounting action but without making him a party to the lawsuit. Clearly, this allegation on its face fails to meet the requirement *that an action or process be instituted against the plaintiff* in order to sustain [this] cause of action.

*Id.* at 1107 (emphasis added). *Cf. Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 304 (D. Mass. 2011) (granting summary judgment for defendants on abuse of process claim, where record did not include sufficient facts to create genuine issue concerning their participation in criminal proceedings against plaintiff: "[A]n abuse of process claim requires that the defendants participate in judicial proceedings against the plaintiff.").

[17] Here, Eckerle was not a defendant (and was not allowed to intervene as a plaintiff) in AP-128, and the mere threat of him being named as a defendant in future litigation is insufficient to support an abuse of process claim. *See Pruitt v. Chow*, 742 F.2d 1104, 1109 (7th Cir. 1984) (affirming summary judgment for defendants on Pruitt's abuse of process claim, which was based on their threat to initiate civil suit against company that allegedly paid Pruitt for fundraising

assistance in possible violation of securities law: "[T]he plaintiff has not cited, nor can we find, any Illinois cases in which a person such as Pruitt has made a successful claim of abuse of process where there has been no legal action actually brought against him…. Here, not only is Pruitt's abuse of process claim based entirely [on] a mere threat of a lawsuit, but the threat was not even directed at him.") (citing, inter alia, RESTATEMENT (SECOND) OF TORTS § 682 (1977)); *State v. Rendelman*, 947 A.2d 546, 557 n.9 (Md. 2008) (noting that "the mere threat of the initiation of meritless or frivolous litigation" does not constitute abuse of process, which requires "the *actual* pursuit of litigation to be applicable."). Therefore, we affirm the trial court's judgment.

[18] Affirmed.

Vaidik, C.J., and Mathias, J., concur.