

FILED

May 13 2020, 6:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Ryan P. Sink
Fox, Williams & Sink, LLC
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
STATE OF INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Aaron T. Craft
Section Chief, Civil Appeals

Kian J. Hudson
Deputy Solicitor General

Julia C. Payne
Sarah J. Shores
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Mark J. Crandley
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffany Abbott, Cathie Barnes, and Chandra Gray,[1] | May 13, 2020 |
| *Appellants-Defendants,* | Court of Appeals Case No. 19A-PL-2367 |
| v. | Interlocutory Appeal from the Henry Circuit Court |
| Individual Support Home Health Agency, Inc., | The Honorable Kit C. Dean Crane, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 33C02-1904-PL-34 |

**Mathias, Judge.**

[1] Tiffany Abbot, Cathie Barnes, and Chandra Gray (collectively "the Appellants") have filed an interlocutory appeal of the Henry Circuit Court's order denying the motion to dismiss the complaint filed by their former employer, Individual Support Home Health Agency, Inc. ("Home Health"). The Appellants argue that reports they made to the Indiana State Department of Health ("the ISDH") are protected by absolute privilege and cannot serve as a basis for any civil lawsuit.

[2] Concluding that the Appellants' reports are protected by absolute privilege, we reverse.

---

[1] Ashley McCartney and Angie Benefiel were also defendants below, but neither filed an appearance or otherwise participates on appeal. However, pursuant to Ind. Appellate Rule 17(A), "[a] party of record in the trial court . . . shall be a party on appeal."

## Facts and Procedural History

[3] Home Health provides healthcare services to homebound patients, and its services are regulated by the ISDH. Home Health employed the Appellants, who are licensed nurses, to serve as case managers for the company's patients.

[4] In 2017, the Appellants made reports to the ISDH claiming that Home Health employees forged the Appellants' signatures on documents related to patient care. Home Health alleged that the reports were false, and the Appellants acted out of malice after receiving poor performance reviews. The ISDH investigated the Appellants' reports and concluded that the forgery reports were not substantiated.

[5] Home Health claims the Appellants also encouraged other employees to make false reports to the ISDH. After Appellants terminated their employment with Home Health, they induced other Home Health employees to terminate their employment.

[6] On April 29, 2019, Home Health filed a complaint against the Appellants for defamation, tortious interference with a contract, and tortious interference with a business relationship. On June 25, 2019, the Appellants filed a motion to dismiss the complaint and argued that their statements to the ISDH were absolutely privileged. The trial court denied the Appellants' motion to dismiss, and at the Appellants' request, the court certified its order for interlocutory appeal. Our court accepted jurisdiction over the appeal on November 8, 2019.

# Standard of Review

The trial court denied the Appellants' Trial Rule 12(B)(6) motion to dismiss. We review a trial court's ruling on a 12(B)(6) motion using a de novo standard, meaning no deference is given to the trial court's decision. *Lei Shi v. Cecilia Yi*, 921 N.E.2d 31, 36 (Ind. Ct. App. 2010). "The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact." *Id.* at 36–37. "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Id.* at 37. We consider the pleadings and reasonable inferences in the light most favorable to the nonmoving party. *Id.*

# Discussion and Decision

The Appellants filed a motion to dismiss Home Health's complaint arguing that their reports to the ISDH are cloaked with absolute privilege and cannot serve as the basis for any civil suit.

## I.  Absolute Privilege

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Hartman v. Keri,* 883 N.E.2d 774, 777 (Ind. 2008) (citations omitted). "The reason upon which the rule is founded is the necessity of preserving the due administration of justice . . . by providing actors

in judicial proceedings with the freedom to participate without fear of future defamation claims." *Id.* (citations and quotations omitted).

[10] Historically, absolute privilege was only recognized in formal judicial proceedings. But, in *Hartman*, our supreme court considered whether complaints of sexual harassment made by Purdue University graduate students against a professor were protected by absolute privilege. The students filed formal complaints alleging sexual harassment with the Purdue Affirmative Action Office. The professor was notified of the complaints and was permitted to respond. An investigation ensued, and the investigator found that the professor had harassed one student and had created a hostile educational environment. The investigator's findings were reviewed by a three-person panel, and the panel adopted her recommendation to immediately remove the professor from his teaching responsibilities. The professor appealed the determination to Purdue's president, who upheld the panel's decision.

[11] The professor filed a complaint in Allen Superior Court against the students alleging libel, slander, and malicious interference with his employment contract. The students moved for summary judgment and argued that their complaints made pursuant to Purdue policy were protected by an absolute privilege.

[12] This issue was ultimately resolved in the students' favor by our supreme court. The court observed:

> [The students] acted under the procedure Purdue established. Protecting their complaints with anything less than an absolute privilege could chill some legitimate complaints for fear of retaliatory litigation. Other faculty-student disputes would result in traditional litigation rather than academic resolution to avoid any risk of loss of the absolute privilege accorded statements in judicial proceedings. A university should be given the latitude to tailor its processes to the educational environment without degrading the protection the law gives to complaints of misconduct in the educational setting.

*Id.* at 778.

[13] The court noted that as a deterrent to false reporting, enrolled Purdue students are subject to academic discipline for abuse of process. *Id.* "[T]he need for protection is greater in the educational setting because the subject of the complaint—the educator—is in a position of authority over the student, so fear of retaliation presents a potential obstacle to open airing of grievances." *Id.* Importantly, the *Hartman* court extended absolute privilege to statements made during quasi-judicial proceedings. *Id.*

## II.  The Appellants' Reports to the ISDH

[14] The ISDH is responsible for licensing and regulating home-healthcare agencies. Ind. Code §§ 16-27-1-7, 16-27-1-8, 16-27-1-12. Indiana Code section 16-27-1-7 requires the ISDH to "adopt rules" to "[p]rotect the health, safety, and welfare of patients" and "[g]overn the procedure for issuing, renewing, denying, or revoking an annual license to a home health agency[.]"

[15] The ISDH relies on employee reports to regulate home-healthcare agencies and to protect the vulnerable patients those agencies serve. *See* 848 Ind. Admin Code 2-2-2(11), 2-2-3(13). In its Amicus Curiae Brief, the State argues that "chilling the report of substandard care could have disastrous, even fatal, consequences." Amicus Curiae Br. at 10.

[16] Home Health repeatedly argues that our courts have not extended absolute privilege to "a false report of wrongful conduct" made to a regulatory agency. Appellee's Br. at 9–10. However, the veracity of the Appellants' reports to the ISDH is irrelevant to our inquiry.[2] Our inquiry is whether the reports were made in the context of a judicial or quasi-judicial proceeding.

---

[2] The ISDH did not find that Appellants' reports of forgery were false, just that they were not substantiated. This finding equates to lack of proof of the report, not that the report was necessarily false. *See* Merriam-Webster Online Dictionary (defining "substantiate" as "to establish by proof or competent evidence"), https://www.merriam-webster.com/dictionary/substantiate (last visited April 29, 2020) [https://perma.cc/8GBB-VFNK].

Reports of substandard care have led to the revocation of Home Health's license, which is currently pending judicial review. Home Health complains that the Appellants should not have included the administrative law judge's order in their appendix because the order was not included in the trial court's record in these proceedings and was issued after the trial court denied the Appellants' motion to dismiss. Home Health's argument is well-taken; however, the fact that Home Health has filed a petition for judicial review in Henry Circuit Court of the administrative law judge's order revoking its license is a matter of public record. Pleadings and actions are obtainable from Odyssey, the statewide electronic case management system. In *Horton v. State*, 51 N.E.3d 1154, 1160–61 (Ind. 2016), our Supreme Court observed that Evidence Rule 201(b)(5) "now permits courts to take judicial notice of 'records of a court of this state'" and that such records are presumptively sources of facts "that cannot reasonably be questioned."

In publicly filed pleadings in cause number 33C01-2002-MI-19, the judicial review proceeding, the ISDH alleges that a wheelchair-bound patient died after an aide failed to attend the patient during an evening visit, because the aide was not feeling well. The ISDH also alleges that a home health aide was performing unsupervised catheterizations for another patient, which she failed to document, and only nurses have authority to perform catheterizations unless that duty is delegated to the aide under the nurse's supervision.

[17] Home Health asserts the Appellants did not make their reports to the ISDH in a judicial or quasi-judicial proceeding. Home Health attempts to analogize the statements made by the Appellants in this case to communications made to law enforcement reporting criminal activity, which are afforded only qualified privilege. *See e.g. Williams v. Tharp*, 914 N.E.2d 756, 763 (Ind. 2009).

[18] In *Hartman*, our supreme court addressed a similar argument and noted that "it may seem anomalous to grant a higher degree of protection to complaints made in the educational setting." 883 N.E.2d at 778. The court observed that there were substantial deterrents to the students submitting false reports concerning faculty conduct. And "the need for protection is greater in the educational setting because the subject of the complaint—the educator—is in a position of authority over the student, so fear of retaliation presents a potential obstacle to open airing of grievances." *Id.* The *Hartman* court concluded that "there is both a diminished need to deter false reporting and a greater need to encourage reporting than exists outside the educational environment." *Id.*

[19] Here, there are also substantial deterrents to false reporting. Licensed health care professionals are expressly prohibited from "engag[ing] in fraud or material deception in the course of professional services or activities[.]" Ind. Code § 25-1-9-4(b). Sanctions for engaging in fraud or deception include revoking or suspending a practitioner's license or imposing a fine. I.C. § 25-1-9-9. In addition, false reporting will likely impact the health care professional's current employment and possibly his or her future employment as well. And Home

Health, the employer, is unquestionably in a position of power over the Appellants.

[20] Moreover, and even more compelling than the circumstances in *Hartman*, the Appellants are obligated to report substandard care to the ISDH. Failing to do so can result in sanctions, including the revocation of their licenses. *See* 848 I.A.C. §§ 2-2-2(1)(11); 2-2-3(6)(13).

[21] The United States District Court for the Northern District of Indiana relied on *Hartman* to conclude that reports of a patient injury to the ISDH were made in the context of a quasi-judicial proceeding covered by absolute privilege. *Doswell v. Trace*, 2016 WL 3685119 (N.D. Ind. 2016). In that case, Tanglewood Trace, an assisted living facility, reported injuries suffered by a resident patient while in a nursing assistant's care. Doswell, the nursing assistant, was employed by Maxim, a temporary staffing agency. As a result of the neglect report, Doswell's license was temporarily suspended. An administrative law judge eventually determined that Doswell was not negligent in her care of the resident patient.

[22] Doswell filed a complaint against Maxim and Tanglewood Trace for libel and slander alleging that the entities maliciously started the license-revocation proceeding and made false statements about Doswell. The defendants argued that they had a legal obligation to report the injury to the Department of Health and that their statements were immune under the absolute privilege for statements made in quasi-judicial proceedings. Doswell conceded that the defendants had a legal obligation to report the injury to the resident patient.

[23] The District Court determined that the report and investigation by the ISDH was a quasi-judicial proceeding.

> The proceeding was governed by the Administrative Orders and Procedures Act, IC 4-21.5. The reporting of the incident resulted in an investigation by the Indiana Department of Health pursuant to 42 C.F.R. § 483.156, findings, a right to appeal, a hearing before an Administrative Law Judge where evidence was presented, and an issuance by the Administrative Law Judge of findings of fact and conclusions of law.

*Id.* at *4. And after reiterating the defendants' legal obligation to report the patient's injury, the court concluded that "any communication with the Indiana Department of Health was made in the course of a judicial or quasi-judicial proceeding, and is covered by an absolute privilege." *Id.*

[24] Reports of patient injury or substandard care to the ISDH, which result in a "survey" or investigation by the ISDH, are governed by procedures that the ISDH has established pursuant to the Administrative Orders and Procedures Act, IC 4-21.5, as mandated by our General Assembly. *See* Ind. Code § 16-27-1-7. Therefore, we conclude that such proceedings constitute quasi-judicial proceedings.

[25] Home Health also argues that the Appellant's reports were not made in an ongoing quasi-judicial proceeding. However, the cases Home Health cites in support of its argument do not involve reports to a quasi-judicial entity charged

with investigating reports of misconduct.[3] Like the students' complaints in *Hartman*, here, the Appellants' reports to the ISDH initiated a "survey," i.e. an investigation of Home Health. The Appellants' reports initiated the quasi-judicial proceedings at issue in this case.

[26] We must protect vulnerable individuals suffering from an illness or disability who require assistance from healthcare professionals. If a report made by a healthcare professional is not absolutely privileged, it could have a chilling effect on such reports. Extending absolute privilege to reports made to the ISDH protects healthcare professionals against the fear of retaliatory litigation.

[27] For all of these reasons, we conclude that the Appellants' reports to the ISDH are protected by absolute privilege.

### III. Tortious Interference Claims

[28] Home Health argues that its tortious interference with a contract and tortious interference with a business relationship claims should not be dismissed even if the Appellants' reports are protected by absolute privilege because the Appellants induced Home Health employees to terminate their employment. But our court has held that "[o]ther torts related to defamation, or relying upon defamatory statements as proof of wrongdoing, may also be barred by the

---

[3] For example, Home Health relies on *Eckerle v. Katz & Korin, P.C.*, 81 N.E.3d 272, 282 (Ind. Ct. App. 2017), which discussed whether statements made prior to a proposed judicial proceeding were privileged, and *Britt Interactive LLC v. A3 Media LLC*, 2017 WL 2118513 (S.D.Ind. May 15, 2017), which addressed statements made between private parties prior to any litigation. We are unpersuaded by Home Health's reliance on these cases involving easily distinguishable circumstances.

absolute privilege." *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249 (Ind. Ct. App. 2013) (citing *Hartman*, 883 N.E.2d at 776–77) (concluding that "the absolute privilege bars Lax and Lasco's actions for defamation, negligent supervision and retention, tortious interference with a business relationship, and tortious interference with a contract"), *trans. denied*.

[29]    Home Health's claim that the Appellants' made false reports to the ISDH are integral to its tortious interference claims.[4] *See e.g.* Appellants' App. pp. 15–16 ("By making the False Reports, the Defendants intentionally induced patients to breach their contracts with" Home Health and "[t]he Defendants were aware of the existence of these contracts, including at the time they made the False Reports and induced [Home Health] employees to leave their employment with the company"). For this reason, Home Health's tortious inference claims must also be dismissed.

---

[4] The Appellants counter that encouraging employees to resign falls significantly short of meeting numerous necessary elements for any tortious interference claim. For example, a plaintiff must prove "some independent illegal action" to prevail on his claim of tortious interference with a business relationship. *See Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). And defamation "does not constitute illegal conduct for the purpose of determining whether one tortiously interfered with the business relationship of another." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014), *trans. denied*. In its complaint, Home Health did not allege that the Appellants engaged in any independent illegal action.

With regard to the tortious interference with a contract claim, in its complaint, Home Health did not allege that any actual breach of contract occurred or that a breach of contract caused any damages. *See Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 118 (Ind. Ct. App. 2008) ("A plaintiff alleging tortious interference with a contractual relationship must establish five elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach.").

# Conclusion

[30] The Appellants' reports to the ISDH are protected by absolute privilege because the reports initiated a quasi-judicial proceeding. Therefore, the trial court erred when it denied the Appellants' motion to dismiss Home Health's complaint. We therefore reverse and remand this case to the trial court with instructions to dismiss Home Health's complaint.

[31] Reversed and remanded for proceedings consistent with this opinion.

Riley, J., and Tavitas, J., concur.